**HOUSING FINANCE AND DEVELOPMENT CORPORA-TION**, a public body and body corporate and politic, Plaintiff–Appellee, v. **JAMES CHRISTIAN CASTLE** (aka James C. Castle), **JAMES CASTLE McINTOSH** and **HAWAIIAN TRUST COMPANY, LIMITED**, a Hawaii corporation, as trustees of the trust created by the unrecorded Trust Agreement of Alice Hedemann Castle, and **JAMES C. CASTLE** as Individual Trustee, Defendants–Appellants, and **JAMES ROY ANNIS**, et al., Defendants–Appellees

NO. 14871

(CIV. NO. 88–2361–07)

OCTOBER 23, 1991

LUM, C.J., PADGETT, HÁYASHI, WAKATSUKI, AND MOON, JJ.

OPINION OF THE COURT BY PADGETT, J.

This is an appeal from an order denying a motion to alter or amend a judgment. The court below, pursuant to its reading of our decision in *Hawaii Housing Authority v. Midkiff*, 69 Haw. 247, 739 P.2d 248 (1987), after a fact hearing fixed blight of summons damages, for the lots condemned in this action under HRS Chapter 516, at 10% per annum, but ordered that those blight of summons damages stop as of the date of judgment. Since the court referred to HRS § 101–25, presumably it contemplated that, from the date of judgment until payment, appellants would receive interest at the statutory rate of 5% under that section on the total amount of the judgment.

This case requires us to deal with another of the lacunae in the statutes with respect to condemnations under HRS Chapter 516. In *Midkiff*, we held that after valuation had been fixed by a jury, it was necessary for the court to hold a fact hearing to determine the blight of summons damages from the date of summons to the date of judgment. This case poses the problem of what happens between the date of judgment and the date of payment.

In condemnations other than under Chapter 516, the condemning authority normally wants, and gets from the court, possession of the property, or a right to enter thereon, at a point in time fairly close to the issuance of the summons. In order to do this, the condemning authority has to deposit what it, in good faith, estimates the compensation for the property condemned to be, and the owner, if there are no tax liens outstanding, can usually draw down that deposit. The statutory sections concerned are HRS §§ 101–28 through 101–33. It was against this backdrop of statutory procedures that this court decided *City & County v. Bonded Investment Co.*, 54 Haw. 385, 507 P.2d 1084 (1973).

In the ordinary condemnation proceeding, therefore, blight of summons damages, on the monies not deposited and drawn down,

are calculated on the difference between the jury's award and the deposit, from the date of summons until the date of payment. *See State v. Pioneer Mill Co.*, 64 Haw. 168, 637 P.2d 1131 (1981).

On the other hand, as the facts in *Midkiff*, and in this case show, condemnations under Chapter 516 are handled very differently. The condemning authority does not seek possession, does not make a deposit, the landowner has no monies to draw down, and the lessor and lessee remain in their respective positions with respect to the lease obligations from the date of summons to the date of payment. The entry of judgment in such cases starts running the two–year period in which payment must be made under HRS § 101–25.

Just compensation is a concept which is somewhat difficult to apply. In point of fact, no sale occurs on the date of summons, at which valuation is fixed, and there is no guarantee that a rate of interest, calculated on that amount, from that date forward is the absolute measure of the value lost by the blight of summons. Nevertheless, the Constitution demands that just compensation be paid, and the courts are left to the task of trying to approximate just compensation with tools which are, at best, inexact.

In this situation, there seems to be no logical reason for terminating blight of summons damages as of the date of judgment since the landowners and the lessees are in the same situation after the entry of the judgment as they were in before the entry of the judgment. That being so, it seems to us that in such cases blight of summons damages should be measured from the date of summons to the date of payment, as in ordinary condemnation proceedings.

There is no basis in a condemnation case for pre–judgment interest. As to post–judgment interest, we noted in *State v. Pioneer Mill Co.*, 64 Haw. 168, 637 P.2d 1131 (1981), that post–judgment interest on the blight of summons award is not allowable.

However HRS § 101–25 does make provision for post–judgment interest at the rate of 5% per annum to be paid under

specified conditions. If, therefore, in a condemnation under HRS Chapter 516 those conditions are met, post–judgment interest at the rate of 5% per annum on the award of fair market value (but not the blight of summons damages) must also be paid.

*Bruce L. Lamon* (*Gary M. Slovin* and *Carol A. Eblen* with him on the briefs; Goodsill Anderson Quinn & Stifel) for appellants.

*Anthony Locricchio* and *Thomas Lavigne* for appellee lessees.

*Carolee M. Aoki* (*Sonia Faust* and *Stanley H.C. Young* with her on the brief), Deputy Attorneys General, for appellee Housing Finance.